PATRICK J. WHITE,

      Plaintiff,

      v.

AMY CAMPANELLI,
THE PUBLIC DEFENDER OF
COOK COUNTY, in her official capacity,
 *et al.*,

      Defendants.

Case No. 1:14-cv-7215

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick White ("Plainitff") has been employed with the Office of the Cook County Public Defender (the "Office") since 2002. Plaintiff currently alleges that he was denied a promotion within the Office on the basis of his gender, and brings claims for sex discrimination and retaliation pursuant to Title VII, and for deprivation of his constitutional rights under 28 U.S.C. § 1983.[1] Defendants Stephanie Hirshboeck, Crystal Marchigiani, Darlene Williams (collectively, the "Individual Defendants") and Amy Campanelli ("Campanelli"), in her official capacity as the Public Defender of Cook County, have moved for summary judgment on all counts. [78] at 1. As explained below, Defendants' motion is denied.

---

[1] Plaintiff's Second Amended Complaint also contains claims for age discrimination and race discrimination. [35] at 5-12. Plaintiff voluntarily dismissed those claims, however, in his response to Defendants' motion for summary judgment. [89] at 1 ("Plaintiff hereby dismisses his claims of discrimination based on age and race. Plaintiff will proceed on his claims of gender based discrimination and retaliation.").

## I.    Background[2]

Plaintiff has been employed with the Office since December 2002.  [80] at 1.
By 2013, White was working as an Assistant Public Defender III assigned to the
Felony Trial Division.  *Id.* at 2.

On May 14, 2013, a Notice of Transfer/Promotion Opportunity was posted for
a number of Assistant Public Defender IV positions.  *Id.* at 4.  White applied to be
an Assistant Public Defender IV.  *Id.* at 5.

Applicants for the Assistant Public Defender IV position were evaluated by a
promotion panel (the "Panel") composed of the Individual Defendants.  *Id.* at 4.
Hirschboeck was the chair of the Panel.  *Id.*  The Panel's duties included
investigating, interviewing, and scoring applicants, and recommending applicants
for promotion to Assistant Public Defender IV.  *Id.*  The Panel determined that they
would consider the following criteria: experience, written application, interview,
body of work, and seniority.  *Id.*

Forty-two people applied for Assistant Public Defender IV positions,
including White.  *Id.* at 5.  The Panel determined that thirty-eight of those
applicants were qualified, [90] at 7, and those same thirty-eight qualified
applicants, including White, were interviewed in July and August of 2013.  [80] at 5.
Twenty of the thirty-eight interviewees were male, while eighteen were female.
[109] at 3.

---

[2] The facts are taken from the parties' Local Rule 56.1 statements. [80] refers to Defendants'
statement of facts.  [90] contains both Plaintiff's responses to Defendants' statement of facts and
Plaintiff's statement of additional facts.  [109] refers to Defendants' responses to Plaintiff's
statement of additional facts.

During each interview, the Panel posed ten questions, each of which was worth five, ten or fifteen points. [80] at 5. Each member of the Panel generated an individual score for each interviewee. *Id.* An interviewee could receive a maximum score of ninety during the interview portion. *Id.* at 6.

The Panel interviewed Plaintiff on July 23, 2013. *Id.* Hirschboeck gave Plaintiff a score of 38 out of 90; Marchigiani gave Plaintiff a score of 35 out of 90; and Williams gave Plaintiff a score of 36 out of 90. *Id.*

On August 8, 2013, the Panel held a consensus meeting to discuss the applicants and tally their scores. *Id.* After the consensus meeting, Hirschboeck composed a report summarizing the Panel's findings for then-Public Defender Abishi Cunningham, Jr., who adopted the Panel's recommendations. *Id.*

Defendants "admit that 20 of the 38 [interviewed] applicants were promoted." [109] at 3. The parties disagree as to the gender ratio of the twenty candidates who received promotions: Defendants contend six of the promoted candidates were male, [109] at 3, while Plaintiff insists that only five were male. *Id.* at 2. Based upon the Court's review of the record, Defendants are correct. *See* [80-4] at 67-68 (list of promoted candidates includes Bernard Okitipi, Steve Journey, William Bolan, Steve Tyson, Vernon Schleyer, and Kevin Ochalla). In either event, the parties agree that White was not among the five or six promoted male candidates.

White contends that when he did not receive a promotion, he publicly complained of gender discrimination, and the Defendants retaliated against him for exercising his First Amendment rights. More specifically, White claims that the

Defendants retaliated against him by: (1) allowing a subpoena for his testimony to issue in the matter of *People v. Eric Brooks*; (2) doubling his case load; (3) assigning him to more demanding courtrooms; (4) failing to notify him of an "ineffective assistance" petition filed against him; (5) assigning him to less desirable office space; (6) publicly and erroneously accusing him of failing to file a notice of appeal; and (7) manipulating his case assignments. White also claims that, when he complained that his new workspace was cramped, his supervisor told him: "Don't worry, we will get a skinny female to take your place." [90] at 13-14.

White filed a Charge of Discrimination with the EEOC on June 17, 2014, alleging retaliation and discrimination based upon his race, sex and age. [80] at 8. The original complaint in this lawsuit was filed in September of 2014. [1] at 7.

## II.     Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts

and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Plaintiff has three remaining claims: Count III (gender discrimination under Title VII); Count IV (retaliation under Title VII); and Count V (denial of equal protection under 28 U.S.C. § 1983). Plaintiff's Title VII claims are against Campanelli in her official capacity, which functionally means those claims are pending against the Office itself. *See Carver v. Sheriff of LaSalle Cty., Illinois*, 243 F.3d 379, 381 (7th Cir. 2001) (A "supervisor is not a proper defendant in Title VII; the suit must proceed against the employer as an entity rather than against a natural person."). Plaintiff's § 1983 claim, meanwhile, is pending against both the Office and the Individual Defendants. The Court addresses each in turn.

### A. Count III – Gender Discrimination Under Title VII

Title VII of the Civil Rights Act of 1964 prohibits two categories of employment practices. Under Title VII, it is unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). These proscriptions are the basis for the two operative theories of recovery for discrimination claims under Title VII: "disparate treatment" and "disparate impact."

### 1. Disparate Treatment

Until recently, plaintiffs in the Seventh Circuit could avoid summary judgment on their disparate treatment claims by making one of two showings. A plaintiff could first attempt to satisfy the so-called "direct method" of proof, whereby the Court would evaluate whether the plaintiff had presented "sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014).

Alternatively, a plaintiff could pursue the so-called "indirect method" of proof. As first described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the "indirect method" allowed the plaintiff to shift the burden of proof on the question of intent to the defendant, once the plaintiff made certain showings. *See id.* at 802. Specifically, the plaintiff first had to make a *prima facie* case, showing that: "(1) he belonged to a protected class; (2) he applied and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer awarded the promotion to someone outside the protected class who was not better qualified." *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014) (modifying the *McDonnel Douglas prime facie* case for failure-to-promote claims). If the plaintiff made his *prima facie* case, the burden shifted to the defendant to give a non-

discriminatory reason for treating the plaintiff the way it did. *Id.* If the defendant then met *its* burden, the onus shifted back to the plaintiff to show that the defendant's explanation was not pretextual. *See McDonnell Douglas*, 411 U.S. at 802, 804.

The Seventh Circuit recently streamlined this procedure in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 763 (7th Cir. 2016). *Ortiz* eliminated the distinction between the direct and indirect methods, stating that the "time has come to jettison these diversions and refocus analysis on the substantive legal issue." *Id.* at 3. The "substantive legal issue," as identified in *Ortiz*, was whether "a reasonable juror could conclude that Ortiz would have kept his job if he had a different ethnicity, and everything else had remained the same." *Id.* Phrased another way, the operative "legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. When applying this standard, the evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence."[3] *Id.*

---

[3] In so deciding, the Seventh Circuit explicitly overruled numerous decisions "to the extent that these opinions insist on the use of the direct-and-indirect framework." *Id.* at 765. *Ortiz* also overruled precedent that instructed district courts to determine, as part of the direct method, whether the plaintiff had presented a "convincing mosaic" of circumstantial evidence. *Id.* Defendants cited multiple cases overruled by *Ortiz* in support of their motion for summary judgment, and Plaintiff suggests that these cases should be disregarded in their entirety. Plaintiff is mistaken. *Ortiz* only overruled those cases "to the extent that they rely on" the "convincing mosaic" formulation or the direct/indirect distinction. *Id.*

The Seventh Circuit also explained that *Ortiz* did not undermine the "burden-shifting framework created by *McDonnell Douglas* or any other burden-shifting framework." *Id.* at 766. Indeed, *Ortiz* and *McDonnell Douglas* are easily reconciled:

> To survive summary judgment, then, a plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that the plaintiff was discriminated against due to a protected characteristic, suffering an adverse employment action. *McDonnell Douglas* identifies one pattern that the evidence might fit that would enable a reasonable juror to find discrimination—namely, a pattern of evidence showing that the plaintiff belonged to a protected class, met her employer's legitimate expectations, suffered an adverse employment action, and was similarly situated to other employees who were not members of the protected class and who were treated better, provided that the defendant fails to articulate a reasonable alternative explanation or the plaintiff shows that the defendant's proffered alternative explanation is a pretext. But the pattern identified in *McDonnell Douglas* is just one way that the record evidence could enable a reasonable juror to find discrimination. A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether a reasonable factfinder could conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.

*Zegarra v. John Crane, Inc.*, No. 15-cv-1060, 2016 WL 6432587, at *6-7 (N.D. Ill. Oct. 31, 2016).

Consistent with *Zegarra*'s formulation, this Court reviews the evidence adduced by Plaintiff, as a whole, to determine whether a reasonable juror could conclude that Plaintiff was discriminated against due to his gender. The "pattern

identified in *McDonnell Douglass*," as modified for failure-to-promote cases, will lend structure to the Court's holistic inquiry, as "just one way that the record evidence could enable a reasonable juror to find discrimination." *Id.*

### a) Protected Class

Plaintiff, as a male, must adduce evidence of "background circumstances" or something "fishy" to demonstrate that he qualifies as a member of a protected class under Title VII. *See Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) ("When a plaintiff is a member of a majority--for instance, a male plaintiff alleging gender discrimination--we have said he must set out background circumstances that show that the employer discriminates against the majority, or he must show there is something fishy going on.") (internal quotation omitted).

The "background circumstances" here demonstrate that Plaintiff was a member of a protected class for the purposes of his gender discrimination claim. Defendants concede that an all-female Panel rejected Plaintiff's promotion request. *See supra* at 2. When a non-minority plaintiff alleges that he suffered an adverse employment decision issued by members of a minority group, that same plaintiff is a member of a protected class for the purposes of Title VII. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 822 (7th Cir. 2006) ("Analogously, here we have a black employer terminating white employees and hiring black replacement workers. These circumstances create the same inference of discrimination flowing from the more straightforward discrimination cases."); *Preston v. Wisconsin Health Fund*, 397 F.3d 539, 542 (7th Cir. 2005) ("It is not surprising when women discriminate in

favor of women any more than it is surprising when men discriminate in favor of men.").

### b)    Application and Rejection

Defendants concede that Plaintiff applied for a position as an Assistant Public Defender IV, and was rejected.  *See supra* at 2-3.

### c)    Qualification

Defendants contend that Plaintiff was not qualified for a position as an Assistant Public Defender IV.  Defendants premise their argument upon their subjective evaluation of Plaintiff's motion practice, Plaintiff's lack of experience with complex experts, and Plaintiff's failure to successfully utilize any "non-pattern" jury instructions.

The record, however, belies Defendants' argument.  Plaintiff was deemed "qualified" by the very Panel evaluating candidates for promotion to Assistant Public Defender IV.  *See* [79] at 8 (characterizing Plaintiff as "not *as qualified* for the position as" others) (emphasis added); [108] at 8 (acknowledging that Plaintiff had tried "more than the minimum number of murder trials to qualify for the Grade IV attorney position"); *id.* at 10 ("White was deemed 'qualified' in the sense that he was eligible for an interview because he met the minimum requirements for the position . . . .").  A reasonable factfinder could easily find, as the Panel did, that Plaintiff was qualified for a position as an Assistant Public Defender IV.

### d) Promotion Awarded To Less Qualified Persons Outside The Protected Class

Plaintiff alleges that a number of the female candidates selected for promotion were less qualified than him, insofar as they were: (1) not "death penalty qualified" by the Illinois Supreme Court; and (2) junior to him.

Defendants correctly note that Plaintiff's status as "death penalty qualified" is irrelevant. The death penalty has been abolished as a matter of Illinois state law, and the ability to handle "death penalty cases" is no longer a part of the job description for an Assistant Public Defender IV. Accordingly, a candidate's status as "death penalty qualified" is not relevant to this prong of the Court's inquiry.

Conversely, seniority is clearly one of the relevant job qualifications in this case. Indeed, seniority was one of the five factors explicitly considered by the Panel. *See supra* at 2-3.

Defendants do not dispute that Plaintiff was senior to a number of the female candidates promoted over him; instead, Defendants argue that Plaintiff's "assertion that he had more seniority than other candidates does not prove that he was *more qualified*." [106] at 10 (emphasis added).

Defendants' argument misapprehends the governing standard. The operative question is whether, after construing all the facts in Plaintiff's favor, a reasonable juror could determine that the Office "awarded the promotion to someone outside the protected class *who was not better qualified*." *Adams*, 742 F.3d at 735 (emphasis added). Plaintiff was senior to a number of the female candidates promoted over him, and seniority was one of the five factors explicitly considered by

the Panel; thus, a reasonable factfinder could plausibly determine that certain of the female candidates promoted over Plaintiff were "not better qualified" under *Adams*.

### e) Other Evidence

Plaintiff has adduced other evidence of discrimination that informs the Court's holistic inquiry under *Ortiz*. First, Plaintiff's affidavit recounts an instance in which, after he filed his complaint with the EEOC, he was forced to move to a different workspace. Plaintiff's new workspace was relatively confined, and, when he complained, his supervisor remarked: "Don't worry, we will get a skinny female to take your place." *See supra* at 4.

Plaintiff also invokes the testimony of Mr. David Dunne, a supervisor at the Office, to suggest that there has been "a history of discrimination against males" within the organization. Mr. Dunne testified as follows:

> Q. Have you ever experienced promotions that you believe were driven by the race, sex, or national origin of the applicant rather than the skills?
>
> [Counsel for Defendants]: Objection. Relevance.
>
> A. You're asking whether I've ever felt like I've been passed over because of the –
>
> Q. Yes, or saw people promoted who were female or a minority race that you felt were less qualified?
>
> A. Oh, yeah, yeah, yes. I had -- there were people who were promoted that I felt were less qualified.
>
> Q. And were those people at times female?
>
> A. At times, there were some females.

[90-2] at 8.

### f)   Plaintiff's Disparate Treatment Theory Survives Summary Judgment

Ultimately, the Court concludes, after a holistic inquiry considering the evidence as a whole, that Plaintiff has adduced sufficient evidence that a reasonable factfinder could conclude that he was denied a promotion based upon his sex. He applied and was qualified for the position sought; he was denied that position by a Panel composed solely of members of the minority group; and, based upon the record, a reasonable factfinder could determine that the female candidates who actually received promotions were not better qualified than him. *See Adams*, 742 F.3d at 735 (7th Cir. 2014) (modifying the *McDonnel Douglas prime facie* case for failure-to-promote claims).

Moreover, Plaintiff has adduced other competent evidence suggesting possible discrimination, including a discriminatory comment about his potential replacement and testimony indicating the Office has a history of sexist hiring practices. *See supra* at 12. Defendants' request for summary judgment on Plaintiff's disparate treatment theory is accordingly denied at this point in the proceedings.

### 2.   Disparate Impact

The "disparate impact" theory under Title VII allows plaintiffs to recover for "employment practices that are facially neutral in their treatment of different groups" but that, in fact, fall "more harshly on one group than another and cannot

13

be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n. 15 (1977). To establish a *prima facie* case of disparate impact, "the plaintiff is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-95 (1988)). In addition, the plaintiff must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has" disproportionally affected male workers because of their gender. *Id.* (internal quotation omitted). Once the plaintiff offers sufficient statistical evidence, then the burden shifts "to the defendant-employer to demonstrate that the employment practice is job related for the position in question and consistent with business necessity." *Id.*

### a)    Specific Employment Practice

Plaintiff identifies three "specific employment practices" which, he contends, are responsible for disparate outcomes in the promotion process: (1) the subjective scoring of the interview questions; (2) the "biased formulation of the questions themselves"; and (3) "Defendants' denial of training, preferred court assignments, and work experience to white males." [89] at 33.

### b)    Sufficient Statistical Evidence

Plaintiff has adduced sufficient statistical evidence tying the scoring and formulation of the interview questions to disparate treatment of male applicants.[4]

Defendants admit that thirty-eight applicants for the promotion at issue were deemed "qualified" and thereafter subjected to the challenged interview questions. *See supra* at 3.  Of those thirty-eight, twenty were male and eighteen were female. *Id.*  Defendants further "admit that 20 of the 38 applicants were promoted."  [109] at 3.  The parties disagree as to the gender ratio of the twenty candidates who received promotions: Defendants contend six candidates were male, while Plaintiff insists that only five were male.  *See supra* at 2-3.

Even under Defendants' theory, however, a reasonable factfinder could infer that either the formulation or evaluation of the interview questions had a causal relationship with the disparate results for male interviewees.  Of the qualified male interviewees subjected to the challenged interview questions, 30% (6/20) were promoted.  *See supra* at 2-3.  Of the qualified female interviewees subjected to the challenged interview questions, 77% (14/18) were promoted.  *Id.*  This is adequate evidence of a statistical correlation "demonstrating that a specific employment practice of the defendant has a disproportionately negative effect on members of the plaintiff's protected class."  *E.E.O.C. v. Roadway Exp., Inc.*, No. 06 C 4805, 2007 WL 2198363, at *3 (N.D. Ill. July 31, 2007); *see also Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 514 (7th Cir. 1996) ("Put simply, success under a disparate impact theory

---

[4] Plaintiff does not identify any statistical evidence tying the various courtroom assignments to disparate treatment of male applicants.  Accordingly, the Court deems this portion of Plaintiff's disparate treatment claim waived.

of discrimination requires a showing of disparate impact."); *Shidaker v. Tisch*, 833 F.2d 627, 632 (7th Cir. 1986) ("Once [Plaintiff] proved that the Postal Service promotes from within and introduced statistical evidence showing a gross disparity between the percentage of women in lower level postmaster positions and those in upper level postmaster positions, she made a sufficient *prima facie* showing of disparate impact. She need not, as the district court apparently thought, make a further statistical showing . . . .").

### c) Not Consistent With Business Necessity

At this point, the burden shifts to Defendants to demonstrate that the scoring and formulation of the interview questions were "job related for the position in question and consistent with business necessity." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012). Defendants have failed to carry their burden on this score; instead, they simply contend in conclusory fashion that they "can show that the promotion practice is job related for the position in question and consistent with business necessity." [79] at 18.

While the interview questions were facially "job related," Defendants have utterly failed to articulate how either the form or evaluation of the interview questions is "consistent with business necessity." Accordingly, Defendants' request for summary judgment on Plaintiff's disparate treatment claim is denied.

### B. Count IV – Retaliation Under Title VII

To state a claim for retaliation under Title VII, Plaintiff must establish that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action

by his employer; and (3) there is a causal link between the protected expression and the adverse action." *See Jennings v. Tinley Park Cmty. Consolidated Dist. No. 146*, 796 F.2d 962, 966-67 (7th Cir. 1986).

The "only element in dispute is causation." [79] at 19. Whether a reasonable factfinder can infer the existence of the requisite causal relationship "depends on context," including the timing of the alleged retaliatory actions and any other "corroborating evidence of a retaliatory motive." *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) (noting that a "jury, not a judge, should [usually] decide whether the inference is appropriate") (internal quotation omitted).

Defendants first suggest that there can be no causation here because Plaintiff admits that he did not inform the Individual Defendants that he had filed a Charge of Discrimination. This argument is inconsistent with the record and governing case law. Plaintiff "was very vocal about the fact that he felt the Promotional Board conducted the promotion process in a discriminatory manner," and "[s]everal employees in his office were aware" that he felt the promotions board "had showed favoritism to females." [89] at 35. These complaints, which specifically reflected Plaintiff's objection to discrimination based upon his sex, constituted protected activity, and a reasonable jury could infer that Defendants were aware of the same. *See Armfield v. Runyon*, 902 F. Supp. 823, 826 (N.D. Ill. 1995) ("Circumstantial evidence is sufficient to show an employer's awareness of protected expression, and all that is required of a Title VII plaintiff is to produce evidence giving rise to an inference of such awareness."); *see also Smith v. Lafayette Bank & Trust Co.*, 674

F.3d 655, 658 (7th Cir. 2012) ("In order for Smith's complaints to constitute protected activity, they must include an objection to discrimination on the basis of [sex].").

Defendants then claim that because they did not have direct control over any of the "adverse actions" Plaintiff experienced, causation is not present here. This argument is unavailing. Plaintiff's Title VII retaliation claim is pending against Campanelli in her official capacity, which means it is truly pending against the Office itself. *See Carver*, 243 F.3d at 381 (A "supervisor is not a proper defendant in Title VII; the suit must proceed against the employer as an entity rather than against a natural person."). The Office cannot evade liability by simply claiming that other supervisors, absent here, retaliated against Plaintiff.

Moreover, a reasonable factfinder could infer that Defendants Hirschboeck and Marchigiani themselves took certain adverse actions against Plaintiff. Hirschboeck admits that she "indirectly supervised" Plaintiff, [80] at 9, and that she oversaw his transfer to a new courtroom, which resulted in an increased caseload. [106] at 25. Similarly, attorneys supervised by Marchigiani sought to subpoena Plaintiff's testimony in the case of *People v. Eric Brocks*. *Id.* Marchigiani claims that she "had nothing to do with the decision to issue the subpoena," but the attorneys who sought the subpoena worked for her, and she, in her own words, "expected" that Plaintiff would move to quash it. *Id.*

Ultimately, a reasonable factfinder could conclude that the requisite causal relationship exists here. Plaintiff endured a large volume of negative employment

actions in close proximity to his protected expression, and he witnessed at least one discriminatory comment during that same period. *See supra* at 2-3. Based upon the record, Defendants' motion for summary judgment on Plaintiff's retaliation claim is denied.

### C. Count V – Denial of Equal Protection Under 28 U.S.C. § 1983

As previously mentioned, Plaintiff's claims against Campanelli in her official capacity are functionally equivalent to claims against the Office itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (An "official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). This rule has unique significance for Plaintiff's § 1983 claim, as "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Unless "there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible." *Id.* In order to establish an unconstitutional policy, Plaintiff must provide evidence: (1) of an express policy that causes a constitutional deprivation when enforced; (2) of a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Id.*

Defendants essentially make three arguments in support of their request for summary judgment on Plaintiff's § 1983 claim against Campanelli in her official capacity.[5] None are availing.

First, Defendants suggest that "White has not identified a specific policy, widespread custom, or deliberate act that was the proximate cause of alleged injuries or that any policies, practices, and customs sanctioned disparate treatment." [79] at 24. This argument is inconsistent with the record. As previously discussed, Plaintiff has adduced competent evidence suggesting that Defendants "deliberately" discriminated against him in the promotion process and retaliated against him when he exercised his First Amendment rights. *See supra* at 10-19. Moreover, the testimony of David Dunne, discussed *supra*, suggests that the Office has a widespread custom of sexist promotion practices. Finally, Plaintiff has adduced sufficient evidence suggesting that the "specific policy" reflected in the formulation and evaluation of the challenged interview questions resulted in a disparate impact on male applicants, including Plaintiff. *See supra* at 13-16.

Defendants also argue that Plaintiff's "evidence is insufficient," as he primarily relies on his own affidavit to resist summary judgment on his § 1983 claim. [79] at 24. Defendants' position is explicitly premised upon *Albiero v. City of*

_____

[5] It is not clear from their briefing whether Defendants are also seeking summary judgment on Plaintiff's § 1983 claims against the Individual Defendants. To the extent any such arguments are present in the briefing, they are so underdeveloped that the Court deems them waived. *See Pond v. Michelin N. Am., Inc.*, 183 F.3d 592, 597 (7th Cir. 1999). Any such arguments would also fail as a substantive matter, in light of the preceding analysis. *See Lauderdale v. Illinois Dep't of Human Servs.*, No. 13-cv-3062, 2016 WL 5660369, at *7 (C.D. Ill. Sept. 28, 2016) ("The Title VII and § 1983 claims are analyzed under the same general framework. The inquiry concerns whether the evidence would permit a reasonable factfinder to conclude that the Plaintiff's sex caused the salary disparity.").

*Kankakee*, 246 F.3d 927 (7th Cir. 2001). *Alibero*, however, was overruled four years ago. *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (explaining that "the following cases [including *Albiero*] are overruled to the extent that they suggest a plaintiff may not rely on "self-serving" evidence to create a material factual dispute"). An affidavit used to oppose a summary judgment motion need only "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff's affidavit remains based upon his personal knowledge, the facts contained therein would be admissible in evidence, and he is competent to testify regarding the same.

Finally, Defendants suggest that summary judgment is appropriate on Plaintiff's § 1983 claim because he has "presented flawed and incomplete statistical evidence." [79] at 24. This argument is rejected. As the Court previously explained when considering Plaintiff's disparate impact theory, a reasonable factfinder could infer that the scoring and formulation of the relevant interview questions had a causal relationship with the disparate treatment of male applicants. Accordingly, Defendants' request for summary judgment on Plaintiff's § 1983 claim is denied.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [78] is denied.


Dated: February 9, 2016

Entered:

John Robert Blakey
United States District Judge