UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK J. WHITE,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE COOK COUNTY<br>PUBLIC DEFENDER, *et al.*<br><br>    Defendants. | Case No. 14-cv-7215<br><br>Judge John Robert Blakey |

## MEMORANDUM OF DECISION

Plaintiff alleged gender discrimination by the Office of the Cook County Public Defender in violation of Title VII of the Civil Rights Act of 1964, stemming from his pass over for promotion to Grade IV Assistant Public Defender in 2013. *See* Second Am. Compl. [35]. Plaintiff framed his Title VII discrimination claim under theories of both disparate treatment and disparate impact. *See* Tr. [157] 597:3-11. On July 18, 2017, the Court rendered a verdict in favor of the Office of the Cook County Public Defender on Plaintiff's disparate impact claim. *See* Minute Entry [149]; Tr. [163] 1166:2-5. As promised at trial, this Memorandum Opinion supplements the Court's decision as to the bench trial claim only. *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusion of law separately. The findings and conclusions may be stated on the record after the close of the

evidence or may appear in an opinion or a memorandum of decision filed by the court.").

Having considered the evidence presented, the parties' written submissions, and oral arguments, the Court makes the following findings of fact and conclusions of law:

**I.     Findings of Fact**

1. Plaintiff Patrick J. White began working at the Office of the Cook County Public Defender in December 2002. Tr. [153] 190:15-17, 20-22; Tr. [154] 300:18-21.

2. Plaintiff is male.

3. In September of 2013, approximately 650 employees worked in the Office of the Cook County Public Defender. Tr. [157] 621:2-4. Of these 650 employees, approximately 450 were attorneys. *Id.* at 621:5-6.

4. The Office of the Cook County Public Defender contains four levels of non-supervisory attorneys, also known as Assistant Public Defenders. *Id.* at 622:15-16. These levels range from Grade I to Grade IV. *Id.* at 622:15-623:2.

5. Generally, promotions from Grade I to Grade II occur automatically upon the completion of an attorney's first year of service. *Id.* at 622:19-23. Further promotions, however, are awarded through formal promotion processes. *Id.* at 623:11-16.

6. In the spring of 2013, Plaintiff was a Grade III Assistant Public Defender. Tr. [153] 191:9-10.

2

7. On May 14, 2013, the Office of the Cook County Public Defender announced a promotion opportunity for the position of Grade IV Assistant Public Defender. Defs.' Ex. 1.

8. At the time of the promotion announcement, fifteen Grade IV Assistant Public Defender positions were available for immediate promotion. Tr. [153] 271:9-13; Tr. [157] 626:15-17; Tr. [158] 786:10-17; Tr. [160] 898:18-20; Tr. [161] 976:9-13.

9. The minimum qualifications for the position of Grade IV Assistant Public Defender were as follows:

   a. Graduation from an accredited school of law with a Juris Doctor degree;

   b. A current State of Illinois law license in good standing;

   c. A minimum of five years' experience as an Assistant Public Defender;

   d. Experience as lead counsel or meaningful participation as secondary counsel in at least five first degree murder trials to verdict or finding where the client was tried as an adult;

   e. Experience as lead counsel in at least ten additional felony jury trials to verdict; and

   f. Substantial familiarity with and experience in the use of expert witnesses, mental health, pathology, and DNA evidence.

Defs.' Ex. 1.

10. Additional knowledge, skills, and abilities sought for Grade IV Assistant Public Defenders included the following:

   a. The ability to clearly, logically, and effectively express verbal and written thoughts and opinions and possess a thorough and accurate knowledge of basic legal principles, concepts, and vernacular;

b. The ability to effectively communicate and interact with diverse cultures and low-income people in consultations, interviews, and investigations;

  c. The ability to probe into sensitive social issues involving family, *i.e.*, sexual abuse, child abuse, substance abuse, and domestic violence;

  d. The ability to conduct excellent trial advocacy work, interviews, and investigations;

  e. The ability to consult with social workers, probation officers, medical experts, legal associates, and others to assess the options available to the defense and advise clients of the same;

  f. The ability to conduct legal research; and

  g. Knowledge of computer programs relevant to trial practice and presentation.

Defs.' Ex. 9.

11. The application for the position of Grade IV Assistant Public Defender consisted of: (1) a cover letter; (2) a completed Grade IV Information Form; and (3) an interview. Defs.' Exs. 4, 6.

12. The Grade IV Information Form was a ten-page fillable form that requested information about the applicant's professional background and experience. Defs.' Ex. 6. The requested information included the following:

  a. Past and present courtroom and judge assignments;

  b. Past and present courtroom partners and supervisors;

  c. The total number of felony jury trials in which the applicant performed a significant function;

  d. The name, case number, charge, judge, and trial partner of ten felony jury trials in which the applicant served as first chair;

e. The total number of murder trials in which the applicant performed a significant function as lead or secondary counsel;

f. The name, judge, trial partner, and details of at least five murder trials (bench or jury) in which the applicant performed a significant function as lead or secondary counsel;

g. The different types of expert witnesses the applicant had worked with, including the expert's name, field of expertise, and whether the applicant had direct-examined, cross-examined, or merely consulted with the expert;

h. The name and date of any seminars presented by the applicant;

i. The last five evidentiary motions presented by the applicant, including the type of motion and outcome;

j. A description of two of the applicant's "more creative" motions, including the type of motion, why and how it was presented, and the outcome;

k. An explanation of why the applicant would visit the scene of an alleged crime in some cases but not others;

l. The last five on-scene investigations conducted by the applicant, including the purpose of the investigation and the outcome;

m. An explanation of why the applicant would make more than one jail visit in some cases but not others;

n. A list of any non-Illinois Pattern Instructions that the applicant had tendered for trial;

o. A description of the applicant's use of technology at trial;

p. A description of a difficult client that the applicant had represented; and

q. A description of a case in which the applicant had conducted extensive sentencing advocacy.

*Id.*

13. Plaintiff applied for the position of Grade IV Assistant Public Defender. Tr. [153] 191:11-13.

14. The Collective Bargaining Agreement between Assistant Public Defenders and the County of Cook mandates that "the most qualified applicant" be selected when filling a vacancy through promotion. Defs.' Exs. 4, 10; Tr. [157] 628:7-23.

15. The Office of the Cook County Public Defender established a Grade IV promotion board to interview and evaluate the applicants for Grade IV positions and recommend the fifteen most qualified applicants to the Public Defender. Defs.' Ex. 4; Tr. [157] 626:23-627:2, 628:16-23.

16. The Grade IV promotion board was comprised solely of individual Defendants Stephanie Hirschboeck, Crystal Marchigiani, and Darlene Williams. Defs.' Exs. 4, 157.

17. Individual Defendants Hirschboeck, Marchigiani, and Williams are female. Tr. [154] 267:20-21.

18. At the time the Grade IV promotion board convened, Defendants Hirschboeck, Marchigiani, and Williams each possessed over twenty-five years of experience at the Office of the Cook County Public Defender, including important leadership positions. *See* Tr. [158] 703:5; Tr. [160] 891:15-17, 950:24-951:6. Defendant Hirschboeck served as chief of the Felony Trial Division. Tr. [158] 713:13-15. Defendant Marchigiani served as chief of the Homicide Task Force. Tr.

[160] 895:10-17. Defendant Williams served as the chief of the Bridgeview Office. *Id.* at 952:16-18.

19. Bidding for the position of Grade IV Assistant Public Defender closed on June 3, 2013. Defs.' Ex. 1.

20. Once bidding for the position of Grade IV Assistant Public Defender closed, a list of applicants was compiled and sent to the Grade IV promotion board for interviews. Defs.' Ex. 5; Tr. [154] 266:17-24.

21. The Grade IV promotion board interviewed thirty-eight applicants. Tr. [158] 739:9-11.

22. Of the thirty-eight applicants interviewed for Grade IV positions, twenty were male and eighteen were female. Tr. [154] 266:17-24. Said another way, of the thirty-eight applicants interviewed for Grade IV positions, 47.37% were female, while 52.63% were male. *See id.*

23. The members of the Grade IV promotion board reviewed each applicant's Grade IV Information Form and investigated the professional background of each applicant prior to the applicant's interview. Defs.' Ex. 4.

24. Interviews of the thirty-eight applicants occurred on July 10, 19, 22-24, 26, 30, and August 1, 2013. Defs.' Ex. 157.

25. Interviews conducted by the Grade IV promotion board consisted of the following ten questions, with possible points for each question ranging from five to fifteen points.

   a. What do you think is the most significant non-murder jury case you have tried? Why is that case significant? (10 points)

b. What is the most significant participation you have had in a murder trial? What was significant? (15 points)

c. What motions do you think are most significant in cases you have tried? (10 points)

d. What are the most significant experts for which you have been responsible? What is your preparation for these experts? (10 points)

e. What significant investigations have you personally conducted with an investigator? (5 points)

f. What does the phrase "sentencing advocacy" mean to you? (10 points)

g. How do you use jury instructions in your cases? (10 points)

h. How have you creatively used an exhibit? (10 points)

i. How have you effectively used technology at trial? (10 points)

j. What makes a client difficult to represent? (10 points)

Defs.' Ex. 7.

26. Defendants Hirschboeck, Marchigiani, and Williams drafted both the interview questions and Grade IV Information Form by using templates from prior, unrelated promotion panels. Tr. [156] 440:11-17, 449:2-451:9; Tr. [157] 631:9-632:3; Tr. [158] 717:6-19, 720:21-22; Tr. [160] 897:2-7, 13-22.

27. Defendants Hirschboeck, Marchigiani, and Williams submitted both their interview questions and Grade IV Information Form for internal review and approval by their supervisors (who were male) prior to their use by the promotion board. Tr. [156] 450:16-451:9; Tr. [158] 717:20-25, 722:7-16; Tr. [160] 897:8-12.

28. Defendants Hirschboeck, Marchigiani, and Williams chose the specific interview and Grade IV Information Form questions based upon the qualifications,

8

knowledge, skills, and abilities were necessary for the position of Grade IV Assistant Public Defender. Tr. [158] 719:24-720:4.

29. After each interview, each member of the Grade IV promotion board scored each applicant on the ten interview questions. Defs.' Ex. 4.

30. In scoring each question, each member of the Grade IV promotion board considered: (1) each applicant's Grade IV Information Form; (2) each applicant's interview; and (3) the investigation of each applicant's professional background. *See* Tr. [158] 755:9-16.

31. Defendants Hirschboeck, Marchigiani, and Williams scored each question based upon the qualifications, knowledge, skills and abilities necessary for the position of Grade IV Assistant Public Defender. *See* Tr. [158] 756:14-767:18, 772:16-782:22, 798:13-799:6; Tr. [159] 837:20-24; Tr. [160] 899:6-24, 909:12-915:24, 916:21-924:6, 932:23-933-1; Tr. [161] 974:22-976:8, 977:9-21, 978:5-21, 979:22-982:24, 985:1-990:20.

32. Originally, applicants were eligible to receive up to 100 points from each Grade IV promotion board member, for a combined total of up to 300 points. Tr. [153] 268:6-11.

33. During the promotion process, however, Defendants Hirschboeck, Marchigiani, and Williams determined that two interview questions (questions eight and nine) both dealt with the use of exhibits at trial. *See* Defs.' Ex. 7 ("8. Tell us how you have creatively used an exhibit? . . . 9. Tell us how you have effectively used technology at trial."); Tr. [158] 768:6-7; Tr. [161] 983:20-984:1. Defendants

9

Hirschboeck, Marchigiani, and Williams further determined that, at that point in time, many applicants did not yet have the opportunity to utilize technology in the courtroom. Tr. [158] 768:7-25. As a result, Defendants Hirschboeck, Marchigiani, and Williams obtained approval to eliminate the lower of the two scores on questions eight and nine for each applicant. *Id.*; Tr. [161] 984:2-4

34. After the lower of the two scores on questions eight and nine was eliminated, applicants were eligible to receive up to ninety points from each Grade IV promotion board member, for a combined total of up to 270 points. Tr. [158] 769:13-22.

35. After interviewing each applicant, the Grade IV promotion board discussed:

    a. Each applicant's Grade IV Information Form;

    b. Each applicant's interview; and

    c. The investigation of each applicant's professional background.

Defs.' Exs. 4, 157; Tr. [158] 771:6-24.

36. After discussing each applicant, the Grade IV promotion board ranked the applicants based upon the combined score awarded by the Grade IV promotion board. Tr. [158] 784:2-15. In the event two applicants received the same combined score, the applicant with higher seniority was ranked higher. *Id.* at 785:13-786:1.

37. Of the thirty-eight interviewed applicants, two applicants, Scott Kozicki and Brian Walsh, were deemed unqualified for promotion because they did not possess the required number of first-chair felony jury trial experience. Defs.'
10

Exs. 157, 175; Tr. [158] 790:14-791:8. The remaining thirty-six interviewed applicants were deemed minimally qualified for promotion to Grade IV. Defs.' Exs. 157, 175.

38. Of the thirty-six interviewed applicants deemed minimally qualified for promotion to Grade IV, fifteen were recommended for immediate promotion:

    a. Bernard Okitipi (score of 258 out of 270);

    b. Toya Harvey (score of 253 out of 270);

    c. Andrea Webber (score of 250 out of 270);

    d. Lisa Brean (score of 243 out of 270);

    e. Joanne Rosado (score of 243 out of 270);

    f. Steve Journey (score of 242 out of 270);

    g. William Bolan (score of 242 out of 270);

    h. Margaret Domin (score of 240 out of 270);

    i. Steve Tyson (score of 230 out of 270);

    j. Connie Jordan (score of 228 out of 270);

    k. Lakshmi Jha (score of 227 out of 270);

    l. Brett Balmer (score of 226 out of 270);

    m. Tyria Walton (score of 225 out of 270);

    n. Valerie Panozzo (score of 224 out of 270); and

    o. Kelly McCarthy (score of 224 out of 270).

Defs.' Exs. 157, 175.

39. Of the fifteen interviewed applicants who were recommended for immediate promotion to Grade IV, eleven were female, while four were male. Tr. [153] 271:17-21. Said another way, of the fifteen interviewed applicants who were recommended for immediate promotion to Grade IV, 73.33% were female, while 26.67% were male. *See* Tr. [153] 271:17-21.

40. The four males recommended for immediate promotion were Bernard Okitipi, Steve Journey, William Bolan, and Steve Tyson. Tr. [154] 308:10-310:23. Overall, these candidates were ranked first, sixth, seventh, and ninth, respectively. *See* Defs.' Ex. 175.

41. On September 6, 2013, the recommendations of the Grade IV promotion board were submitted to the Public Defender for final determination. Defs.' Ex. 4. The Public Defender (who was male) approved the Grade IV promotion board's recommendations shortly thereafter. Defs.' Ex. 160.

42. Of the thirty-six interviewed applicants deemed minimally qualified, four applicants were deemed qualified but not recommended for immediate promotion due to the limited number of Grade IV positions available. Defs.' Exs. 157, 175. The Grade IV promotion board stated that if additional Grade IV positions became available in the future, they would recommend the following applicants in order of scoring:

    a. Jennifer Gill (score of 215 out of 270);

    b. Chandra Smith (score of 214 out of 270);

    c. Vernon Schleyer (score of 214 out of 270); and

12

    d. Lorne Gorelick (score of 213 out of 270).

Defs.' Exs. 157, 175.

    43. Of the four applicants deemed qualified but not recommended for immediate promotion, two were female and two were male. Tr. [154] 313:21-314:5.

    44. The two males deemed qualified but not recommended for immediate promotion were Vernon Schleyer and Lorne Gorelick. *Id.* at 313:21-314:5. Overall, these candidates were ranked eighteenth and nineteenth, respectively. *See* Defs.' Ex. 175.

    45. The four applicants deemed qualified but not recommended for immediate promotion were each promoted to the position of Grade IV Assistant Public Defender over the next several months. Tr. [159] 851:17-20.

    46. Of the thirty-six interviewed applicants deemed minimally qualified, seventeen were not recommended for promotion to Grade IV:

    a. Kevin Ochalla (score of 196 out of 270);

    b. Adolfo Simmonds (score of 192 out of 270);

    c. Paul Brownlee (score of 191 out of 270);

    d. Camille Calabrese (score of 191 out of 270);

    e. Rosa Silva (score of 190 out of 270);

    f. Wendy Steiner (score of 179 out of 270);

    g. Mark Douglass (score of 177 out of 270);

    h. Juanita Lawson-Robinson (score of 150 out of 270);

    i. Christopher Sneed (score of 147 out of 270);

j. Rebecca Gold (score of 139 out of 270);

k. Roger Warner (score of 133 out of 270);

l. Peter Benesh (score of 130 out of 270);

m. Jeff Walker (score of 120 out of 270);

n. [Plaintiff] Patrick White (score of 109 out of 270);

o. Paul Laurent (score of 103 out of 270);

p. Richard Paull (score of 79 out of 270); and

q. Paul Christiansen (score of 72 out of 270).

Defs.' Exs. 157, 175.

47. Of the seventeen interviewed applicants who were not recommended for promotion to Grade IV, five were female and twelve were male. *See* Defs.' Exs. 157, 175; Tr. [154] 266:17-24.

48. Overall, Plaintiff ranked thirty-third out of the thirty-six applicants deemed minimally qualified. Defs.' Exs. 157, 175; Tr. [153] 272:18-20.

49. On or about September 21, 2015, based upon a union seniority grievance and compromise not including Plaintiff or the individual defendants, a new promotion list was created using the promotion rankings originally created by the individual Defendants, adjusting for seniority. Tr. [154] 430:19-23.

50. From this new list, the following five individuals later received promotions to the position of Grade IV Assistant Public Defender:

a. Mark Douglas was promoted on June 29th, 2015;

b. Kevin Ochalla was promoted on December 28th, 2015;

c. Rosa Silva was promoted on February 5th, 2016;

   d. Roger Warner was promoted on February 6th, 2017; and

   e. Wendy Steiner was promoted on February 10th, 2017.

Tr. [154] 430:24-431:8.

51. Of the five individuals who later received promotions to the position of Grade IV Assistant Public Defender as a result of the union seniority grievance and compromise, two were female, and three were male. *See* Defs.' Exs. 157, 175; Tr. [154] 266:17-24, 430:24-431:8.

## II. Conclusions of Law

The "disparate impact" theory under Title VII allows plaintiffs to recover for "employment practices that are facially neutral in their treatment of different groups" but that, in fact, fall "more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n. 15 (1977); *see also Farrell v. Butler Univ.,* 421 F.3d 609, 616 (7th Cir. 2005) (holding that an employer is liable under Title VII pursuant to a disparate impact theory "when a facially neutral employment practice disproportionately impacts members of a legally protected group"). To establish a *prima facie* case of disparate impact, "the plaintiff is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-95 (1988)). In addition, the plaintiff must offer "statistical evidence of a kind and degree

15

sufficient to show that the practice in question" has disproportionally affected male workers because of their gender. *Id.* (internal quotation omitted). Once the plaintiff offers sufficient statistical evidence, then the burden shifts "to the defendant-employer to demonstrate that the employment practice is job related for the position in question and consistent with business necessity." *Id.* If this occurs, "it remains open to the complaining party to show that other tests or selection devices," without a similarly undesirable effect, "would also serve the employer's legitimate interest in 'efficient and trustworthy workmanship." *Allen v. City of Chicago*, 351 F.3d 306, 312 (7th Cir. 2003) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(ii). The proposed alternative "must be available, equally valid and less discriminatory." *Allen*, 351 F.3d at 312.

At trial, Plaintiff identified two "specific employment practices" which he contended were responsible for disparate outcomes in the promotion process: (1) the formulation of Grade IV promotion board interview questions; and (2) the subjective scoring of the Grade IV interview questions.[1]

52. Plaintiff wholly failed, however, to adduce sufficient statistical evidence tying these employment practices to disparate treatment of male applicants. It was undisputed that of the thirty-eight interviewees for Grade IV positions, twenty (or 52.63%) were male and eighteen (or 47.37%) were female. Tr. [154] 266:17-24. In contrast, eleven of the fifteen applicants ultimately

---

[1] Although Plaintiff also attacked Defendants' distribution of courtroom assignments, case assignments, and training opportunities, he later waived that aspect of his disparate impact claim at the summary judgment stage. *See* Mem. Op. and Order [114] 15 n. 4.

16

recommended for immediate promotion (73.33%) were female, while four (26.67%) were male. Tr. [153] 271:17-21. When the four applicants who were promoted later are taken into account, the total promotion numbers equal thirteen (68.42%) female and six (31.58%) male. *See* Tr. [154] 313:21-314:5. If the five individuals who later received promotions as a result of the union seniority grievance and compromise are factored into the analysis, the total promotion numbers equal fifteen (62.5%) female and nine (37.5%) male. *See* Defs.' Exs. 157, 175; Tr. [154] 266:17-24.

Although these superficial disparities may have been enough to withstand judgment as a matter of law, they fell far short of satisfying Plaintiff's burden of proof. For one, courts have long recognized that "the probative value of statistical evidence varies with sample size in disparate-impact cases." *See Connecticut v. Teal*, 457 U.S. 440, 463 n. 7 (1982); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 n. 20 (1977) ("Considerations such as small sample size may, of course, detract from the value of such evidence."); *Ingram v. NWS, Inc.*, No. 92-cv-8339, 1997 WL 688882, at *12 (N.D. Ill. Oct. 23, 1997) ("The usefulness of a statistical analysis is dependent upon the size of the sample used: the smaller the size of the sample, the greater the possibility that any disparities are due to chance."). Indeed, where "the sample size or alleged effect is so statistically insignificant that no inference of discriminatory impact is proper, plaintiff fails to present a *prima facie* case." *Morgan v. Harris Tr. & Sav. Bank of Chicago*, 867 F.2d 1023, 1028 (7th Cir. 1989).

Here, Plaintiff's exceedingly small sample size (at most twenty-four individuals) severely undermined the probative value of his statistical evidence. As "a general matter, statistics drawn from smaller samples are suspect and evaluated with caution," *Ingram*, 1997 WL 688882, at *12 (citing *Lucas v. Dover Corp.*, 857 F.2d 1397, 1403 (10th Cir. 1988) (stating that sample size of eighteen "must be evaluated with caution"); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943 & n. 7 (6th Cir. 1987) (calling sample size of seventeen "suspect")), and "statistics drawn from particularly small samples have been rejected as untrustworthy and irrelevant." *Id.* (citing *Parker v. Fed. Nat. Mortg. Ass'n*, 741 F.2d 975, 980 (7th Cir. 1984) (sample size of twelve lacked "sufficient breadth to be trustworthy"); *Deuschle v. Unisys Corp.*, No. 90-cv-3267, 1992 WL 312647, at *4 (C.D. Ill. June 4, 1992), *aff'd*, 993 F.2d 1549 (7th Cir. 1993) (sample size of fifteen)); *see also Mayor of City of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 621 (1974) (sample size of thirteen); *Morgan*, 867 F.2d at 1028 (7th Cir. 1989) (sample size of twenty-five); *Soria v. Ozinga Bros.*, 704 F.2d 990, 995 (7th Cir. 1983) (sample size of fifteen); *Harris v. Group Health Association, Inc.*, 662 F.2d 869, 872 (D.C. Cir. 1981) (sample size of fourteen).[2] Despite Plaintiff's complaints about the percentage of men

---

[2] Although not cited by Plaintiff, the small sample size presented here also undermines application of the Equal Employment Opportunity Commission's "four-fifths rule." *See* 29 C.F.R. § 1607.4 ("A selection rate for any race, sex, or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact. . . . Greater differences in selection rate may not constitute adverse impact *where the differences are based on small numbers* and are not statistically significant.") (emphasis added). Regardless, the Seventh Circuit has noted substantial criticism of the rule. *See Cox v. City of Chicago,* 868 F.2d 217, 220 n. 1 (7th Cir. 1989).

18

recommended for promotion here, the law simply does not require rigid quotas or formulaic percentages in hiring decisions.

Furthermore, not only was Plaintiff's sample size inadequate, he also failed to interpret the resulting statistical disparities through any expert testimony. Of course, expert analysis is not a formal prerequisite to a disparate impact finding. Nevertheless, such evidence would have helped buttress this Court's "inevitable focus on statistics," *see Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 992 (1988), particularly given the deficiencies raised by Plaintiff's small sample size. *See, e.g., Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 475 (2d Cir. 1999) (upholding finding of disparate impact despite sample size of seven where the plaintiff "presented more than just statistics"; plaintiff also "provided expert testimony on the disparate impact," which combined with statistics, "comfortably tip[ped] the scales in favor of the district court's finding of disparate impact"); *see also Boston Police Superior Officers Fed'n v. City of Boston,* 147 F.3d 13, 22 (1st Cir. 1998) (holding that a small statistical sample plus expert testimony can support a finding of disparate impact); *Fudge v. City of Providence Fire Dep't*, 766 F.2d 650, 659 (1st Cir. 1985) (Breyer, J., concurring) ("Where samples are small, *other* evidence of 'disparate impact' may be highly relevant.") (emphasis in original).

In short, the evidence adduced at trial utterly failed to establish a *prima facie* case. Moreover, even assuming, *arguendo*, that Plaintiff offered sufficient statistical proof, Defendants clearly demonstrated that both the formulation and scoring of the Grade IV interview questions were consistent with business necessity.

19

Defendants Hirschboeck, Marchigiani, and Williams each credibly testified that their actions were based upon an honest desire to promote the most qualified candidates. *See* Tr. [158] 756:14-767:18, 772:16-782:22, 798:13-799:6; Tr. [159] 837:20-24; Tr. [160] 899:6-24, 909:12-915:24, 916:21-924:6, 932:23-933-1; Tr. [161] 974:22-976:8, 977:9-21, 978:5-21, 979:22-982:24, 985:1-990:20. The various aspects of the promotion process, including the formulation and scoring of interview questions, were designed with this legitimate goal in mind.

In response, Plaintiff failed to offer any alternative employment practice that would also serve the Office of the Cook County Public Defender's legitimate business interests. Instead, he merely critiqued the merits of Defendants' specific promotion criterion. This Court, however, does "not sit as a super-personnel department" ready to second-guess an employer's business decisions. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). Plaintiff's criticisms, therefore, were misplaced. The question is not whether the employment decisions were right or fair, but rather whether or not they were discriminatory. Based upon the evidence presented, they were not.

### III. Conclusion

In light of the record and the reasons noted above, the Court found in favor of the Office of the Cook County Public Defender on Plaintiff's disparate impact claim.

Dated: August 14, 2017                          Entered:

                                                John Robert Blakey
                                                United States District Judge