# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PATRICK J. WHITE,

    Plaintiff,

v.

OFFICE OF THE COOK COUNTY
PUBLIC DEFENDER, *et al.*

    Defendants.

Case No. 14-cv-7215

Judge John Robert Blakey

## MEMORANDUM OPINION

This Court began a jury trial in this case on July 10, 2017. At the beginning of trial, six claims from Plaintiff's Second Amended Complaint [35] remained at issue:

| Claim | Description | Defendant(s) |
|---|---|---|
| 1 | **Title VII Discrimination**[1] | Office of the Cook County Public Defender |
| 2 | **Title VII Retaliation** | Office of the Cook County Public Defender |
| 3 | **42 U.S.C. § 1983 Discrimination** | Stephanie Hirschboeck |
|   |   | Crystal Marchigiani |
|   |   | Darlene Williams |
| 4 | **42 U.S.C. § 1983 Retaliation** | Stephanie Hirschboeck |
|   |   | Crystal Marchigiani |
|   |   | Darlene Williams |
| 5 | **42 U.S.C. § 1983 Discrimination** | Office of the Cook County Public Defender |
| 6 | **42 U.S.C. § 1983 Retaliation** | Office of the Cook County Public Defender |

---

[1] Plaintiff supported his Title VII discrimination claim with theories of both disparate treatment and disparate impact. *See* Tr. [157] 597:3-11. The former was decided by the jury, while the latter proceeded to a bench trial. *See* Tr. [152] 4:6-25.

On July 12, 2017, at the conclusion of Plaintiff's case-in-chief, all Defendants jointly moved for judgment as a matter of law pursuant Federal Rule of Civil Procedure 50(a). Tr. [156] 541:18-542:6. On July 13, 2017, after considering the parties' written submissions [136, 141] and oral arguments, the Court orally granted in part, denied in part, and took under advisement in part, the Defendants' motion. Tr. [157] 595:25-602:4. Specifically, the Court granted Defendants' motion as to Claims 5 and 6, as well as to Claim 4 insofar as it related to Defendant Darlene Williams. *Id.* The Court denied Defendants' motion as to Claim 2, and took Defendants' motion under advisement as to Claims 1 and 3, as well as to Claim 4 insofar as it related to Defendants Stephanie Hirschboeck and Crystal Marchigiani. *Id.* On July 17, 2017, the Court reaffirmed its ruling at the close of evidence. Tr. [161] 1045:12-1046:4.

| Claim | Description | Defendant(s) | Ruling |
|---|---|---|---|
| 1 | **Title VII Discrimination[2]** | Office of the Cook County Public Defender | Taken under advisement |
| 2 | **Title VII Retaliation** | Office of the Cook County Public Defender | Denied |
| 3 | **42 U.S.C. § 1983 Discrimination** | Stephanie Hirschboeck | Taken under advisement |
|   |   | Crystal Marchigiani | Taken under advisement |
|   |   | Darlene Williams | Taken under advisement |
| 4 | **42 U.S.C. § 1983 Retaliation** | Stephanie Hirschboeck | Taken under advisement |
|   |   | Crystal Marchigiani | Taken under advisement |
|   |   | Darlene Williams | Granted |
| 5 | **42 U.S.C. § 1983 Discrimination** | Office of the Cook County Public Defender | Granted |
| 6 | **42 U.S.C. § 1983 Retaliation** | Office of the Cook County Public Defender | Granted |

---

[2] This ruling applied both to Plaintiff's disparate <u>treatment</u> and disparate <u>impact</u> theories of liability. Tr. [157] 599:24-600:8.

On July 18, 2017, this Court rendered a bench trial verdict against Plaintiff on his disparate impact claim, and the jury returned a verdict in favor of all Defendants on each of Plaintiff's remaining causes of action. *See* Minute Entry [149]. Given the evidence presented at trial, these results were not surprising. Indeed, this case constituted more than just a simple failure of proof by Plaintiff. To the contrary, the evidence vindicated the Defendants outright.

As promised at trial, this Memorandum Opinion supplements the Court's oral rulings on Defendants' motion for judgment as a matter of law. The verdicts on Plaintiff's: (1) Title VII discrimination and retaliation claims (Claims 1 and 2); (2) 42 U.S.C. § 1983 discrimination claim against Defendants Hirschboeck, Marchigiani, and Williams (Claim 3); and (3) 42 U.S.C. § 1983 retaliation claim against Defendants Hirschboeck and Marchigiani (Claim 4) rendered the Court's ruling as to those claims moot. Therefore, they will not be further discussed. The below analysis explains the Court's rationale for granting Defendants' motion as to Plaintiff's 42 U.S.C. § 1983 discrimination and retaliation claims against the Office of the Cook County Public Defender (Claims 5 and 6), as well as Plaintiff's 42 U.S.C. § 1983 retaliation claim against Defendant Williams.

**I.    Legal Standard**

A court should render judgment as a matter of law when "a party has been fully heard on an issue" and there is no "legally sufficient evidentiary basis" for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a). The standard for granting judgment as a matter of law "mirrors the standard for

granting summary judgment." *Pandya v. Edward Hosp.*, 1 F. App'x 543, 545 (7th Cir. 2001) (internal quotations omitted). Thus, the Court examines the record in its entirety and views the evidence in the light most favorable to the nonmoving party. *Id.* After doing so, the Court determines "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support [a] verdict." *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (quotations omitted). Judgment as a matter of law is proper "if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001).

In making this determination, the Court "may not step in and substitute its view of the contested evidence for the jury's." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, "there must be more than a mere scintilla of evidence" in support of the nonmoving party's case. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012). Thus, judgment should be entered where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

## II. Discussion

### A. Plaintiff's 42 U.S.C. § 1983 discrimination and retaliation claims against the Office of the Cook County Public Defender (Claims 5 and 6)

Although the Supreme Court's ruling in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), subjects local governmental units to suit under 42 U.S.C. § 1983, *respondeat superior* does not suffice to impose liability. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The municipality's *policy*, not employees, must be the source of the discrimination. *Id.*; *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) ("Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents."). In other words, "a municipality can be liable under Section 1983 only for acts taken pursuant to its official policy, statement, ordinance, regulation or decision, or pursuant to a municipal custom." *Mootye v. Dotson*, 73 F. App'x 161, 171 (7th Cir. 2003); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by municipal policymakers.") (quotations omitted).

An official policy or custom may be established by means of: (1) an express policy; (2) a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy; or (3) the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation. *Rice*, 675 F.3d at 675; *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d

5

293, 303 (7th Cir. 2010). Here, even when viewed in the light most favorable to Plaintiff, the evidence at the close of Plaintiff's case-in-chief fails to support a reasonable finding under any of these theories.

First, the express policy theory only applies, as the name suggests, "where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). The *Calhoun* court provided the following example:

> [I]f [a county jail] had a policy that directed the sheriff's personnel to throw away all prescription medications brought in by detainees or prisoners without even reading the label and without making alternative provisions for the affected individuals, the County would be liable assuming that such a policy would, on its face, violate the Eighth Amendment (or the Due Process clause, for pre-trial detainees).

*Id.* Under this type of claim, "one application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability." *Id.* at 379-80. Here, evidence of such an explicit unlawful policy was wholly absent at trial. Instead, Plaintiff presented evidence that individual Defendants Hirschboeck, Marchigiani, and Williams drafted the interview questions posed to Grade IV applicants by using a template from a prior, unrelated promotion panel. Tr. [156] 440:11-17, 449:2-451:9. Plaintiff also introduced evidence that, beginning in January 2013, Grade III attorneys were restricted from first-chairing murder trials, and that second-chairs were chosen on an individual basis by the first-chair Grade IV attorney assigned to the case. *See id.* at 460:19-461-2. With no readily apparent

6

unconstitutionality, these items of evidence are a far cry from policies that expressly violate a constitutional right.

Plaintiff fares no better under an unlawful "widespread practices" theory. Such practices "are not tethered to a particular written policy," and thus require "more evidence than a single incident to establish liability." *Calhoun*, 408 F.3d at 380. Although declining to adopt "any bright-line rules" as to "how frequently such conduct must occur to impose *Monell* liability," the Seventh Circuit has made it clear "that it must be more than one instance, or even three." *Thomas*, 604 F.3d at 303; *see also Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986) ("[T]he isolated act of an employee generally is not sufficient to impose municipal liability."); *Palka v. City of Chicago*, 662 F.3d 428, 435 (7th Cir. 2011) ("[T]wo alleged instances of discrimination do not constitute a widespread pattern or practice."); *Estate of Moreland v. Dieter,* 395 F.3d 747, 760 (7th Cir. 2005) ("[Three] incidents do not amount to a widespread practice that is permanent and well settled so as to constitute an unconstitutional custom or policy[.]"). The Seventh Circuit has also found four instances to be inadequate. *See, e.g. Grieveson v. Anderson,* 538 F.3d 763, 773 (7th Cir. 2008); *Jenkins v. Bartlett*, 487 F.3d 482, 493 (7th Cir. 2007).

Here, Plaintiff once again fell far short of the governing standard. Plaintiff's evidence of allegedly unlawful conduct focused almost entirely on a *single* promotion panel that convened in the spring of 2013. Plaintiff's counsel indicated during opening statements that the evidence would show *other* discriminatory promotion decisions. Tr. [153] 169:16-19. Specifically, Plaintiff's counsel claimed that

7

Plaintiff's former supervisor, David Dunne, would testify that he had been previously been "passed over for a promotion" and believed that "men were discriminated against." *Id.* at 170:9-13. Plaintiff, however, failed to make good on this promise. When called, Dunne merely testified that "at times some more women got promoted" than men, but acknowledged that he was unaware of the candidates' relative qualifications. Tr. [156] 501:15-24, 502:21-25. This is not enough to establish any illegality, much less a widespread practice under *Monell*.

Finally, Plaintiff's evidence attempted to show the establishment of an unlawful policy or custom through the actions of policymaker. Generally, "when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). Here, Plaintiff argued that liability should attach because Defendants Hirschboeck, Marchigiani, and Williams purportedly made the ultimate decision to deny him a promotion because of his gender. Even assuming that the individual Defendants were *decision makers* on promotion, however, does not necessarily make them *policymakers* on that issue. *See Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). The "mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set *policy* for hiring and firing, not a delegation of only the final authority to hire and fire." *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 739 (7th Cir. 1999)

8

(emphasis added). Plaintiff introduced no such evidence here; if anything, he did the opposite. According to the deposition testimony of Defendant Hirschboeck admitted into evidence, the individual Defendants submitted their interview questions for internal review and approval prior to their use by the promotion board. Tr. [156] 450:16-451:9. Once again, *Monell* demands more.

In sum, even when viewed in the light most favorable to Plaintiff, the evidence did not support a reasonable finding that there was a policy or custom of discriminating against males on the basis of gender or retaliating against those engaging in protected speech. As a result, Plaintiff could not establish municipal liability against the Office of the Cook County Public Defender.

## B. Plaintiff's 42 U.S.C. § 1983 retaliation claim against Defendant Williams (Claim 4)

In order to succeed on an individual capacity claim under 42 U.S.C. § 1983 against Defendant Williams, Plaintiff was required to show that Williams was personally involved in his alleged constitutional deprivation. *See Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003); *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1072 (N.D. Ill. 2013). Plaintiff identified the following retaliatory acts that he purportedly suffered after complaining about Defendants' discriminatory promotion process: (1) transfer to other courtrooms with higher caseloads; (2) reduction in office space; (3) issuance of a subpoena against him; (4) being told by his supervisor, Brandi Brixy, that Defendants would "replace him with a skinny female," or words to that effect; (5) non-assignment to murder trials, either as a first or second chair;

9

and (6) denial of training opportunities that would improve his chances for promotion.  *See* Tr. [156] 573:20-574:8.

Even assuming these allegations were true, Plaintiff failed to establish Defendant Williams' personal involvement in *any* of the purported hardships. Throughout the alleged retaliatory period, Plaintiff was assigned to the Public Defender's Felony Trial Division located at 26th Street and California Avenue in Chicago.  *See* Pl.'s Exs. 27-28.  During that time, however, Defendant Williams served as Chief of the Public Defender's Office in Bridgeview.  Tr. [156] 455:17-20. In that capacity, Defendant Williams never had any contact with Plaintiff, nor did she otherwise supervise him or exert any control over the acts of alleged retaliation. *Id.* at 457:18-21; Tr. [154] 410:11-21.  On such facts, a reasonable fact finder could not, as a matter of law, conclude that Defendant Williams had any personal involvement in the assignment of Plaintiff's courtroom, office, caseload, or training.

The dearth of evidence regarding Defendant Williams stood in stark contrast to the other individual Defendants, Stephanie Hirschboeck and Crystal Marchigiani.  At the time of Plaintiff's courtroom transfers, for example, he fell under the direct command of Defendant Hirschboeck, who was serving as Chief of the Felony Trial Division.  Tr. [156] 448:21-25.  Indeed, David Dunne testified that he actually consulted with Defendant Hirschboeck prior to Plaintiff's transfer from Judge Linn to Judge Ford.  *Id*. at 489:7-14.  Similarly, Plaintiff testified that Defendant Hirschboeck was physically present in Plaintiff's office immediately prior to the relocation of Plaintiff's desk and the comment by Plaintiff's supervisor that

10

the office was replacing him "with a skinny female." *Id*. at 243:15-245:4. Finally, Defendants Hirschboeck and Marchigiani each served as supervisors to Kelly McCarthy and Ruth McBeth, respectively, two of the Assistant Public Defenders who issued the subpoena against Plaintiff in December of 2013. Tr. [157] 605:4-12. Unlike Defendant Williams, these facts, while attenuated, nevertheless provided sufficient evidence for a reasonable fact finder to infer Defendants Hirschboeck and Marchigiani's personal involvement in the purported retaliatory activity.

**III. Conclusion**

Defendants' motion for judgment as a matter law as to Plaintiff's 42 U.S.C. § 1983 discrimination and retaliation claims against the Office of the Cook County Public Defender (Claims 5 and 6), as well as Plaintiff's 42 U.S.C. § 1983 retaliation claim against Defendant Williams (Claim 4), was granted for the reasons stated above.

Dated: August 14, 2017                    Entered:

                                                                  _____
                                                                  John Robert Blakey
                                                                  United States District Judge